UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CRISPIN ROSALES SANTOS, | Case No. EDCV 14-01644 (GJS) |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

## I.    PROCEEDINGS

Plaintiff Crispin Rosales Santos ("Plaintiff") filed a complaint seeking review of the Commissioner's denial of his application for Disability Insurance Benefits and Supplemental Security Income.  The parties filed consents to proceed before the undersigned United States Magistrate Judge, and motions addressing disputed issues in the case (Plaintiff's Brief in Support of Complaint ("Plaintiff's Brief") and Defendant's Memorandum in Support of Answer ("Defendant's Memo)).  The Court has taken the motions under submission without oral argument.

/ / /

## II.    BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

Plaintiff asserts disability since February 15, 2011, based primarily on depression, arthritic hands, loss of vision, and injuries in his neck, shoulders, and back.  (Administrative Record ("AR") 24-25, 50-56, 256, 289, 311).

After a hearing, an Administrative Law Judge ("ALJ") applied the five-step sequential evaluation process to find Plaintiff not disabled.  *See* 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).[1]  At step one, the ALJ found that Plaintiff has not engaged in substantial gainful employment since his alleged onset date. (AR 20).  At step two, the ALJ found that Plaintiff's fibromyalgia and degenerative disc disease of the cervical spine are severe impairments, but that Plaintiff's medically determinable impairment of depression is "nonsevere."  (AR 21-22).  At step three, the ALJ found that Plaintiff's impairments, either singly or in combination, do not meet or equal the requirements of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AR 23).  At step four, the ALJ found that Plaintiff retains a residual functional capacity ("RFC") to perform medium work, 20 C.F.R. §§ 404.1567(c), 416.967(c), and, therefore, is capable of performing his past relevant work as a plasterer, warehouse laborer, door window

---

[1] To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.  20 C.F.R. §§ 404.1520, 416.920. The steps are as follows:  (1) Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two; (2) Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three; (3) Does the claimant's impairment meet or equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled.  If not, proceed to step four; (4) Is the claimant capable of performing his past work?  If so, the claimant is found not disabled.  If not, proceed to step five; (5) Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.  20 C.F.R. §§ 404.1520(b)-(g)(1) & 416.920(b)-(g)(1).

assembler, and cleaner. (AR 23, 28-29).

The Appeals Council denied Plaintiff's request for review. (AR 1-3).

## III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), the Court reviews the Administration's decision to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L.Ed.2d 842 (1971) (citation and quotations omitted); *see also Hoopai*, 499 F.3d at 1074.

## IV. DISCUSSION

Plaintiff contends that the ALJ: (1) failed to properly find that Plaintiff has a severe mental impairment; (2) erred in finding that Plaintiff is capable of performing his past relevant work; and (3) erred in the assessment of Plaintiff's credibility. (Plaintiff's Brief at 2-10). As set forth below, the Court agrees with Plaintiff, in part, and remands the matter for further proceedings.

### A. Plaintiff's Mental Impairment

The ALJ erred in finding that Plaintiff's mental impairment is not severe. Remand is appropriate.

Plaintiff's medical records show that he received mental health treatment from two physicians. Plaintiff's primary treating physician, Dr. Octavio Ruiz-Villalpando, began treating Plaintiff for depression and anxiety in October 2011. (AR 413). Later that month, Plaintiff reported that he was "doing better," but Dr. Ruiz-Villalpando diagnosed Plaintiff's depression as "severe." (AR 412). Dr. Ruiz-Villalpando also completed a state disability insurance benefit form indicating that Plaintiff had been unable to perform his customary work since January 2011, due to Plaintiff's severe depression and physical impairments. (AR

3

411-12).  Dr. Villalpando's subsequent treatment notes reflect Plaintiff's ongoing problems with depression.  (AR 409-10, 507, 520, 532, 541-42, 551.)  In April 2012, Dr. Ruiz-Villalpando completed a second state disability insurance benefit form indicating that Plaintiff's ability to perform his work was impaired by his severe back pain, severe depression, and difficulty performing some activities of daily living.  (AR 541, 547).

Meanwhile, Plaintiff received psychiatric and group therapy treatment at the Riverside County Department of Mental Health.  (AR 424, 434-36, 440-46).  At his initial evaluation in November 2011, Plaintiff was diagnosed with major depression, recurrent and assessed with a Global Assessment of Functioning ("GAF") score of 50.[2]  (AR 440-41).  In a December 2011 evaluation, Plaintiff's treating psychiatrist, Dr. David Aryanpur, noted that Plaintiff appeared tearful and sad, and had made vague statements about not wanting to be a burden to others.  (AR 436).  Dr. Aryanpur diagnosed Plaintiff with major depressive disorder, and assessed a GAF score of 47.  (AR 434).  Later that month, Plaintiff reported that he had been severely depressed and experienced suicidal thoughts over the Christmas holiday.  (AR 426).  Shortly thereafter, Dr. Aryanpur completed a state disability insurance form indicating that Plaintiff's severe depression, insomnia, low energy, tearfulness, and inability to focus interfered with Plaintiff's ability to perform his customary work.  (AR 452).  In January 2012, Plaintiff reported feeling better.  (AR 421).  Dr. Aryanpur described Plaintiff's response to medication as "good," but noted that Plaintiff's mood was anxious and sad.  (AR 421).  In February 2012, Dr. Aryanpur reported that Plaintiff was seeing faces in his windows and believed that his neighbors were talking about and laughing at him.  (AR 417).  In March

---

[2] A GAF score between 41-50 indicates serious, but not major symptoms in social, occupation, or school functioning.  Diagnostic and Statistical Manual of Mental Disorders ( DSM-IV) (4th ed., 1994).

2012, Dr. Aryanpur completed a narrative report indicating that Plaintiff's severe depression and anxiety precludes gainful employment. (AR 433). He reported that Plaintiff was experiencing hallucinations and delusions and noted evidence of insomnia, depression, anxiety, suicidal ideation, decreased energy, isolation, apathy, alogia, social withdrawal, and poor grooming. (AR 433). Dr. Aryanpur also found that Plaintiff could not:  maintain a sustained level of concentration, sustain repetitive tasks for an extended period; adapt to new or stressful situations; interact appropriately with others; manage funds; or complete a 40-hour work week. (AR 433). In April 2012, Dr. Aryanpur again noted that Plaintiff was experiencing delusions and hallucinations. (AR 489). In May and June 2012, Dr. Aryanpur reported that Plaintiff had a good response to medication. (AR 472, 479). In July 2012, Dr. Aryanpur reported that Plaintiff's symptoms were almost in remission and Plaintiff reported feeling much better than before. (AR 458). In August 2012, however, Dr. Aryanpur noted that Plaintiff had recently been admitted for emergency treatment services for suicidal ideation. (AR 464). Plaintiff's affect was blunted, his mood was anxious and sad, but he was feeling better with an increase in the dosage of his medication. (AR 460, 464). Three weeks later, Dr. Aryanpur noted that Plaintiff had a blunted affect, was preoccupied with his father's poor health, was having difficulty sleeping, and had not been performing daily activities at home. (AR 465). Dr. Aryanpur assessed the efficacy of Plaintiff's medication as "stable." (AR 463). In September 2012, Dr. Aryanpur completed a second narrative report. (AR 505). Once again, he found that Plaintiff's severe depression precludes gainful employment. (AR 505). In addition to the symptoms identified in his previous narrative report, Dr. Aryanpur noted evidence of confusion, panic episodes, social withdrawal, and the emergence of psychotic symptoms. (AR 505).

In determining that Plaintiff's mental impairment was not severe, the ALJ found that Plaintiff's "psychiatric symptoms were generally well controlled with

therapy and medications." (AR 23). The ALJ cited records indicating that Plaintiff felt better after starting treatment and that Plaintiff had good responses to medication. (AR 22, 410, 412, 421, 434, 440, 458, 461, 472, 479). The ALJ also rejected Dr. Aryanpur's opinion regarding Plaintiff's significant work-related restrictions, as "grossly inconsistent with the longitudinal treatment and therapy notes." (AR 23). Instead, the ALJ gave great weight to the opinion of the non-examining state agency medical consultant, who concluded that Plaintiff's mental impairment was not severe. (AR 23, 90-91, 101-02). The ALJ also gave limited evidentiary weight to Plaintiff's assessed GAF scores, as they revealed "only snapshots of impaired and improved behavior." (AR 22-23, 434, 441, 505).

"An impairment or combination of impairments may be found 'not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2006) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)). To determine whether or not an impairment is severe, the ALJ must determine whether a claimant's impairment or combination of impairments significantly limits his or her physical or mental ability to do "basic work activities." 20 C.F.R. §§ 404.1521(a), 416.921(a). Basic work activities are "the abilities and aptitudes necessary to do most jobs," including physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling, as well as the capacity for seeing, hearing and speaking, understanding, carrying out, and remembering simple instructions, using judgment, responding appropriately to supervision, co-workers and usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b), 416.921(b); *Webb,* 433 F.3d at 686.

The step two inquiry is "'a de minimis screening device' [used] to dispose of groundless claims.'" *Webb*, 433 F.3d at 687 (quoting *Smolen*, 80 F.3d 1273, 1290 (9th Cir. 1996). The lack of a severe impairment must be "clearly established by

6

1    medical evidence."  *Webb*, 433 F.3d at 687 (quoting Social Security Ruling

2    ("SSR") 85-28).  The medical evidence in this case does not "clearly establish"

3    that Plaintiff did not have a severe mental impairment.  *See Yuckert v. Bowen*, 841

4    F.2d 303, 306 (9th Cir. 1988) ("Despite the deference usually accorded to the

5    Secretary's application of regulations, numerous appellate courts have imposed a

6    narrow construction upon the severity regulation applied here.").

7            The ALJ's decision selectively highlighted those portions of Plaintiff's

8    mental health records that supported the conclusion that Plaintiff's mental

9    impairment was not severe, while understating or ignoring evidence to the

10   contrary.  An ALJ must consider all of the relevant evidence in the record and may

11   not point to only those portions of the records that bolster his findings.  *See*, *e.g.*,

12   *Holohan v. Massanari*, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (holding that an

13   ALJ cannot selectively rely on some entries in plaintiff's records while ignoring

14   others); *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) ("[T]he

15   Commissioner's 'decision 'cannot be affirmed simply by isolating a specific

16   quantum of supporting evidence.'") (citing *Sousa v. Callahan*, 143 F.3d 1240,

17   1243 (9th Cir. 1998)); *see also Reddick v. Chater*, 157 F.3d 715, 722-23 (9th Cir.

18   1998) (It is impermissible for the ALJ to develop an evidentiary basis by "not fully

19   accounting for the context of materials or all parts of the testimony and reports.").

20   Here, the ALJ referenced medical records indicating that Plaintiff felt better and

21   had good responses to medication, but failed to address many significant findings

22   of the treating physicians pertaining to Plaintiff's mental impairment.  For

23   example, although the ALJ noted that Dr. Aryanpur reported in July 2012 that

24   Plaintiff's symptoms were almost in remission, the ALJ failed to discuss Dr.

25   Aryanpur's August 2012 report that Plaintiff had been admitted for emergency

26   treatment services for suicidal ideation.  (AR 464).  Similarly, while the ALJ noted

27   that Dr. Ruiz-Villalpando reported that Plaintiff was "doing better" in October

28   2011, the ALJ failed to discuss Dr. Ruiz-Villalpando's subsequent opinions that

                                             7

1    Plaintiff's severe depression contributed to his inability to work.  (AR 405, 547).

2    Thus, the ALJ's step 2 determination is not supported by substantial evidence.

3         Moreover, evidence that Plaintiff's condition improved with medication

4    does not negate the possibility that his mental impairment was severe.  Although

5    the ALJ may consider whether Plaintiff's impairments improved with medications,

6    the ALJ may not rely on improvement from medications alone to demonstrate that

7    Plaintiff's mental impairment is not severe.  *See Holohan*, 246 F.3d at 1205

8    ("[t]hat a person . . . makes some improvement does not mean that the person's

9    impairments no longer seriously affect her ability to function in a workplace."); *see*

10   20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00D2 (stating that an individual's

11   "level of functioning may vary considerably over time. . . . Proper evaluation of [a

12   mental impairment] must take into account any variations in the level of . . .

13   functioning in arriving at a determination of impairment severity over time.").

14   Further, the ALJ's finding that Plaintiff's "condition" was reported as "stable" in

15   August 2012 is not accurate.  (AR 22).  Dr. Aryanpur actually reported that the

16   "assessment of medication efficacy" was stable, not that Plaintiff's "condition"

17   was stable.  (AR 461).  The ALJ's inaccurate characterization of the medical

18   record does not support his step 2 determination.  *See, e.g., Regennitter v. Comm'r*

19   *of Social Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1999).

20        The other reasons cited by the ALJ for rejecting the opinions of Plaintiff's

21   treating physicians are also not legally sufficient.  A treating physician's

22   conclusions "must be given substantial weight."  *Embrey v. Bowen*, 849 F.2d 418,

23   422 (9th Cir. 1988).  Even where a treating physician's opinion is contradicted, "if

24   the ALJ wishes to disregard the opinion[s] of the treating physician he . . . must

25   make findings setting forth specific, legitimate reasons for doing so that are based

26   on substantial evidence in the record."  *Winans v. Bowen*, 853 F.2d 643, 647 (9th

27   Cir. 1987) (citation, quotations and brackets omitted); s*ee Lester v. Chater*, 81 F.3d

28   821, 831 (9th Cir. 1996) (if a treating or examining physician's opinion on

disability is controverted, it can be rejected only with specific and legitimate reasons supported by substantial evidence in the record).  First, the opinion of the non-examining state agency medical consultant, standing alone, does not constitute substantial evidence to warrant the rejection of the treating physicians' opinions. *See Morgan v. Commissioner of the Social Security Administration*, 169 F.3d 595, 602 (9th Cir. 1999).  Second, as Plaintiff's GAF scores reflect only Plaintiff's functioning at particular moments in time, they do not provide a specific and legitimate basis to reject the treating physicians' opinions, given their ongoing treatment relationships with Plaintiff.  (AR 23); *see* 20 C.F.R. §§ 404.1527(d)(2)(f) ("Generally, the longer a treating source has treated [the claimant] and the more times [the claimant has] been seen by a treating source, the more weight [the Commissioner] will give to the source's medical opinion."), 416.927(d)(2)(i) (same).  Third, the ALJ's rejection of Dr. Aryanpur's opinion as "grossly inconsistent" with the medical record is not supported by substantial evidence, given the ALJ's failure to consider all of the relevant medical records, as discussed above.

Finally, Defendant suggests that the ALJ properly found Plaintiff's depression not severe because the record shows that Plaintiff's symptoms resolved within 10 months and, therefore, Plaintiff did not establish that his mental impairment had lasted or was expected to last for a continuous period of 12 months.  (Defendant's Memo at 1-2); *see* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  This argument is flawed, as the ALJ did not give adequate consideration to all of the relevant medical evidence in evaluating Plaintiff's mental impairment, as discussed above.  Further, the ALJ did not discuss the 12-month duration requirement to support his step two finding.  The Court may not rely on reasons the ALJ did not provide to affirm the ALJ's decision.  *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts"); *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001)

(noting that the Court "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision").

While Plaintiff may not "succeed in proving that [he] is disabled," the ALJ "lacked substantial evidence to find that the medical evidence clearly established" [Plaintiff's] lack of a medically severe [mental] impairment." *Webb*, 433 F.3d at 688. Accordingly, the ALJ's step two finding cannot stand.

**B. Plaintiff's Credibility**

Plaintiff's claims that the ALJ improperly found Plaintiff's testimony not fully credible. (Plaintiff's Brief at 6-10).

An ALJ may reject a claimant's credibility "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

Here, the ALJ provided four reasons in support of his adverse credibility determination. The Court discusses and rejects these reasons below.

First, the ALJ found that Plaintiff's complaints of pain with "axial rotation of the trunk" and "axial loading of the spine at the head" during a consultative examination indicated "symptom magnification." (AR 25, 398). The ALJ explained that "axial loading at these points should not cause the pain [Plaintiff] alleged." (AR 25). However, the examining physician made no findings that Plaintiff's complaints of pain were unusual or otherwise indicative of malingering. Therefore, Plaintiff's reports of pain during the consultative examination did not constitute a legally sufficient basis for rejecting Plaintiff's credibility. *See, e.g.*, *Leitheiser v. Astrue*, No. CV 10-6243-SI, 2012 WL 967647 at *10-11 (D. Or. Mar. 16, 2012) (ALJ's adverse credibility finding was legally erroneous and not supported by substantial evidence where the physician did not attribute plaintiff's pain complaints with axial loading and simulated rotation to malingering).

1   Second, the ALJ found that Plaintiff's subjective complaints were

2   inconsistent with the lack of significant medical findings in the consultative

3   examination report and the magnetic resonance imaging scan of Plaintiff's cervical

4   spine.  (AR 25, 396-401, 553-54).  However, the ALJ may not make a negative

5   credibility finding "solely because" the claimant's symptom testimony "is not

6   substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec.*

7   *Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); *Bunnell v. Sullivan*, 947 F.2d 341, 345

8   (9th Cir. 1991) ("an adjudicator may not reject a claimant's subjective complaints

9   based solely on a lack of objective medical evidence to fully corroborate the

10  alleged severity of the [symptoms].").  Thus, as to this ground, the ALJ's

11  credibility determination is inadequate.

12      Third, the ALJ found that Plaintiff several vacations to Mexico suggested

13  that Plaintiff's alleged symptoms and limitations may have been overstated.  (AR

14  25).  However, an ALJ's credibility determination "must be supported by specific,

15  cogent reasons." *Reddick*, 157 F.3d at 722.  In evaluating a claimant's credibility,

16  the ALJ cannot rely on general findings, but "must specifically identify what

17  testimony is credible and what evidence undermines the claimant's complaints."

18  *Morgan*, 169 F.3d at 599; *Lester*, 81 F.3d at 834.  Here, the ALJ made no specific

19  findings as to why Plaintiff's trips to Mexico indicated Plaintiff was exaggerating

20  his pain or other symptoms.  Merely referencing Plaintiff's trips was insufficient to

21  establish a conflict with Plaintiff's testimony.  *See Morgan*, 169 F.3d at 599;

22  *Lester*, 81 F.3d at 834.

23      Fourth, the ALJ asserted that Plaintiff's claim that he was unable to perform

24  yard work was inconsistent with a medical progress note indicating that Plaintiff

25  was injured while gardening.  (AR 25, 541).  Material inconsistency between a

26  claimant's daily activity and the alleged severity of the claimant's symptoms can

27  support an adverse credibility determination.  *See Fair v. Bowen*, 885 F.2d 597,

28  603 (9th Cir. 1989).  However, in this case, Plaintiff's admission regarding his

gardening activities is not materially inconsistent with his allegedly disabling symptomatology. *See Vertigan v. Halter*, 260 F.3d 1044, 1049-50 (9th Cir. 2001) ("the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability"). The cited progress note indicates that Plaintiff's back pain, which was described as "8/10," increased "by gardening mildly." (AR 541). Contrary to the ALJ's finding, the note does not indicate Plaintiff was injured while gardening. Thus, the record fails to show that Plaintiff's asserted gardening activities are inconsistent with his allegedly disabling symptomatology.

Accordingly, the ALJ improperly discredited Plaintiff's testimony.[3]

## V.    CONCLUSION AND ORDER

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). When no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id.* at 1179 ("the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"). But when there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.*

The Court finds that remand is appropriate because the circumstances of this

---

[3] The Court declines to address Plaintiff's remaining claim that he is unable to perform his past relevant work, as consideration of Plaintiff's mental impairment may impact the ALJ's step 4 determination on remand.

12

case suggest that further administrative review could remedy the ALJ's errors.  *See INS v. Ventura*, 537 U.S. 12, 16, 123 S. Ct. 353, 154 L.Ed.2d 272 (2002) (upon reversal of an administrative determination, the proper course is remand for additional agency investigation or explanation, "except in rare circumstances"); *Treichler v. Commissioner*, 775 F.3d 1090, 1101 (9th Cir. 2014) (remand for award of benefits is inappropriate where "there is conflicting evidence, and not all essential factual issues have been resolved"); *Harman*, 211 F.3d at 1180-81.  The Court has found that, with respect to Plaintiff's mental impairment, the ALJ erred at step two of the sequential evaluation process.  Thus, remand is appropriate to allow the Commissioner to continue the sequential evaluation process starting at step three.

IT IS THEREFORE ORDERED that Judgment be entered reversing the Commissioner's decision and remanding this matter for further administrative proceedings consistent with this Memorandum Opinion and Order.

DATED: June 24, 2015

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE

13